IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ALDA MOORE                                                                             PLAINTIFF

v.                                      Case No. 4:13-cv-00350 KGB

PHILANDER SMITH COLLEGE                                                  DEFENDANT

OPINION AND ORDER

Plaintiff Alda Moore brings this action under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e, and the Arkansas Civil Rights Act ("the ACRA"), Ark. Code Ann. § 16-123-101, alleging gender discrimination.[1]  Dr. Moore also alleges a breach of contract claim under Arkansas law.  Defendant Philander Smith College ("College") filed its motion for summary judgment on Dr. Moore's claims (Dkt. No. 14).  Dr. Moore filed her response in opposition to the motion for summary judgment (Dkt. No. 23).  The College replied to Dr. Moore's response (Dkt. No. 26).  For the reasons that follow, the College's motion for summary judgment on Dr. Moore's gender discrimination claims is granted.  The Court declines to exercise supplemental jurisdiction on Dr. Moore's breach of contract claim under Arkansas law.

I.    Factual Background

The College hired Dr. Moore as a psychotherapist available for student consultation on March 15, 2010.  On September 9, 2010, the College appointed Dr. Moore to a tenure-track assistant professor position in the College's Psychology Department for which she applied.  The Psychology Department is administratively housed in the College's Division of Social Sciences.

---

[1] Dr. Moore initially also alleged an age discrimination claim.  That claim was dismissed voluntarily before her motion for summary judgment was filed (Dkt. No. 13).

On July 27 or August 3, 2012, an incident occurred between Dr. Moore and her neighbors, the Crolleys. The Crolleys called the police and filed a police report stating that Dr. Moore pointed a gun at them. On September 8, 2012, Dr. Moore was arrested at her home under an active felony warrant for aggravated assault. On September 9, 2012, Dr. Moore's arrest was reported in the "Police Beat" section of the Arkansas Democrat-Gazette, stating that she was charged with one count of aggravated assault.[2]

On September 10 or 11, 2012, the College placed Dr. Moore on administrative leave with pay. In a letter to Dr. Moore dated September 11, 2012, the College informed her that the administrative leave was pending an investigation by the College; was based on her arrest for aggravated assault; that the College was looking into the matter as a safety precaution for faculty, students, and staff; and that the College would provide further instructions within the next few days (Dkt. No. 14-10). Dr. Moore claims that she was never contacted by anyone from the College within a few days of receiving that letter as to the status of any investigation conducted and that she was never interviewed by anyone from the College or given any other input into the alleged investigation.

In a letter dated October 11, 2012, Dr. Moore's employment was terminated by the college effective October 15, 2012 (Dkt. No. 14-12). The College contends that a female psychology professor, Dr. Bettye Brown, replaced Dr. Moore. Dr. Moore states that during her tenure with the College she never exhibited any kind of violent or disruptive behavior that would suggest she was a threat to any member of the College community. Dr. Moore's court-ordered forensic evaluation occurred in September and October, 2012, and that evaluation determined that "Dr. Moore had no identification of harming self or others" (Dkt. No. 25-20).

---

[2] The parties do not dispute that, as of the date of the filing of the motion, Dr. Moore had not yet been tried or convicted of these charges.

In a letter dated January 11, 2013, the College informed Dr. Moore that, because of her assault charge, the College issued a ban on allowing her on campus (Dkt. No. 25-3).

On December 21, 2012, Dr. Moore filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she was discriminated against because of her age and sex.  On March 13, 2013, Dr. Moore received a notice of dismissal from the EEOC wherein the EEOC determined that it was unable to conclude that the College violated the relevant statutes (Dkt. No. 14-15).

In this action, as in the EEOC charge, Dr. Moore alleges that she was terminated as a result of her arrest while two male employees whose arrests were also reported in the newspaper were not.  The first of these male employees is Professor Jimmy Cheffen.  Professor Cheffen was an assistant professor of English in the Division of Humanities at the College.  Professor Cheffen twice received misdemeanor charges related to the possession of marijuana, drug paraphernalia, contempt of court, and failure to appear.  Professor Cheffen was charged on February 17, 2012, and April 26, 2012, while he was term faculty personnel on a nine-month faculty contract.  On August 11, 2012, Professor Cheffen was placed on tenure-track as an Assistant Professor (Dkt. No. 25-15).  Professor Cheffen resigned his position to accept a teaching post in a different state during the winter recess between December 2012 and January 2013.  The College maintains that it did not become aware of Professor Cheffen's arrests until December 20, 2013, well after his employment with the College ended.

The second of these male employees is George Gray, former Director for Recruitment and Admissions at the College, who was charged with a felony count of sexual assault and a felony count of producing, directing, or promoting sexual performance by a child.  Mr. Gray had allegedly coordinated strippers and people who would perform sexual acts for the fraternities on

3

campus. Based on the criminal charges filed against him, on December 3, 2010, Mr. Gray called a 16-year-old female student into his office, tried to recruit her to perform sexually, and then sexually assaulted her. A police report was filed by the student on December 8, 2010. On December 9, 2010, Mr. Gray resigned from his position at the College effective December 31, 2010. Also on December 9, 2010, the College's then-President Walter Kimbrough, who accepted Mr. Gray's resignation, hired Mr. Gray to serve as a consultant to the Office of Recruitment and Admissions beginning January 2, 2011 (Dkt. No. 25-9). On January 24, 2011, President Kimbrough terminated Mr. Gray's consulting contract, effective immediately, but paid him through the month of February 2011 (Dkt. No. 25-10). Mr. Gray was arrested and charged on October 5, 2011. On October 30, 2012, Mr. Gray pled no contest to a felony charge of promoting prostitution.

## II. Standard of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Hollway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving

party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)) (citing *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006))). "Because summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed." *Id.* Accordingly, this Court applies the same summary judgment standard to discrimination cases as it does to all others.

### III. Gender Discrimination Claims

Claims for intentional discrimination under the ACRA are analyzed using the same framework as Title VII claims. *Hudson v. United Sys. of Arkansas, Inc.*, 709 F.3d 700, 703 (8th Cir. 2013). For this reason, the Court jointly analyzes Dr. Moore's gender discrimination claims under Title VII and the ACRA. Dr. Moore can establish a *prima facie* claim of gender discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a

reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson*, 643 F.3d at 1043–44 (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). Therefore, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. *Id.* A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, irrespective of whether his strong evidence is circumstantial. *Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, [s]he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.* (quoting *Griffith*, 387 F.3d at 736).

### A. Direct Evidence Analysis

"To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation marks omitted). Dr. Moore has presented no direct evidence of discrimination. Accordingly, the Court will proceed through the *McDonnell Douglas* analysis for Dr. Moore's gender discrimination claim.

### B. *McDonnell Douglas* Analysis

Under the *McDonnell Douglas* analysis, "the plaintiff bears the burden of establishing a *prima facie* case of discrimination." *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). If a plaintiff makes out a *prima facie* case, she creates a presumption of unlawful

discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for its actions. *Id*. "If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual." *Id.*

To make out a *prima facie* case of gender discrimination, plaintiff must show: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007). The College, for the purposes of this motion, does not dispute that Dr. Moore can satisfy the first three prongs of the test to make out her *prima facie* case. The College claims that Dr. Moore cannot present material evidence to show that a similarly situated employee outside the protected class was treated differently. The College also contends that, even if Dr. Moore can establish a *prima facie* case, she cannot demonstrate pretext. In support of the fourth element of her *prima facie* case and in support of her claim of pretext, Dr. Moore alleges that similarly situated male employees of the College were not disciplined as harshly—or were not disciplined at all—for engaging in the same or similar conduct for which she was terminated.

The Eighth Circuit recently decided that the standard to determine whether employees are similarly situated "is a search for a substantially similar employee, not for a clone." *Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1231 (8th Cir. 2013) (quotations omitted). "To demonstrate that they are 'similarly situated,' [s]he need only establish that [] she was treated differently than other employees whose violations were of *comparable seriousness*." *Id.* (emphasis in original) (quotations omitted).

7

This Court determines that, even if Dr. Moore can establish a *prima facie* case of gender discrimination, she cannot survive the College's motion for summary judgment based on the pretext analysis. If Dr. Moore establishes a *prima facie* case, the burden shifts to the College to articulate a legitimate, non-discriminatory reason for firing Dr. Moore. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (shifting the burden to defendant to provide a legitimate, non-discriminatory reason for plaintiff's termination where plaintiff makes out a *prima facie* case of discrimination). The College has done this. It cited review of the police report relating to Dr. Moore's arrest, as well as the police report from the day of the alleged incident, to support its decision to terminate Dr. Moore's employment. The College claims it made this decision based on section 8.1.3 of her contract because she engaged in improper or illegal conduct and because it determined her termination was in the best interest of the College for the safety of the faculty, staff, and students.

To the extent Dr. Moore faults the reasons offered by the College for terminating her and claims that the College should have treated her as innocent until proven guilty, that the College did not undertake a sufficiently thorough investigation, and that the College did not contact her about the alleged incident, her arguments are misplaced. The proffered non-discriminatory reasons for termination need not be factually correct so long as the employer honestly believed the asserted grounds at the time of the termination. *Id.* at 762; *see also Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) (determining that courts may not sit in judgment of employers as "super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination"). The College need not have been correct in terminating Dr. Moore for illegal conduct so long as it honestly believed she engaged in illegal or improper conduct.

Dr. Moore has provided no evidence to suggest that the College did not believe in good faith after its investigation that Dr. Moore engaged in illegal or improper conduct.

Since the College provided a legitimate, non-discriminatory reason for the termination, the burden returns to Dr. Moore to present evidence that the reasons offered by the College are a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To prove pretext, Dr. Moore must both discredit the employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating her was her gender. *Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

Dr. Moore attempts to establish a reasonable inference of discrimination by comparing her situation to potential comparators – Professor Cheffen and Mr. Gray. "At the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'" *Bone*, 686 F.3d at 956 (quoting *Rodgers v. U.S. Bank, N.A.,* 417 F.3d 845, 853 (8th Cir. 2005)). To succeed at the pretext stage, Dr. Moore must show that she and the potential comparators she identifies were "similarly situated in all relevant respects." *Id.* (quoting *Rodgers*, 417 F.3d at 853). That is, the employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Wierman v. Casey's Gen. Stores,* 638 F.3d 984, 994 (8th Cir. 2011) (quoting *Cherry v. Ritenour Sch. Dist.,* 361 F.3d 474, 479 (8th Cir. 2004)).

The Court finds that Professor Cheffen is not a valid comparator. The Court agrees with the College that two nonviolent misdemeanor arrests are not as serious as a felony arrest for aggravated assault. It appears from the relevant incident reports that police found the marijuana on Professor Cheffen in the February 17, 2012, incident while executing a contempt warrant

9

(Dkt. No. 14-20). At the time, Professor Cheffen may have been illegally serving alcohol without a permit in the art gallery he managed where he was hosting a fraternity party (*Id.*). In the April 26, 2012 incident, it appears the police found marijuana on Professor Cheffen while executing a failure to appear warrant (*Id.*). Professor Cheffen's charges did not involve a weapon or a threat of violence. Further, although there is some evidence in the record that Professor Cheffen may have illegally sold alcohol without a permit, there is no evidence in the record that he sold to minors or in any way endangered students or other members of the College community. The Court also notes that there is no evidence in the record to suggest that the College knew of Professor Cheffen's arrests before his employment with the College ended. *See Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002) (finding that a reasonable jury could not draw an inference that plaintiff was singled out for discipline where there is no indication that any manager knew the proposed comparators were engaging in similar violations).

The College also argues that Mr. Gray is not a valid comparator because Mr. Gray was not charged with a crime involving a weapon and a threat of violence, that Mr. Gray and Dr. Moore were treated similarly, that the decision makers were different, and that Mr. Gray resigned well before he was arrested and charged with a crime. On the record before it, the Court is unwilling to say that Mr. Gray's alleged violation was not of comparable seriousness. His violation involved sexual assault, a minor, and a College student; reportedly occurred on the College campus; and revealed a potential history of recruiting people to perform sexual acts for a campus fraternity. Dr. Moore allegedly pointed a gun at her neighbors during a dispute in her neighborhood.

The Court further determines that, based on the evidence in the record, Mr. Gray was treated differently than Dr. Moore as he was allowed to resign instead of being placed on administrative leave or terminated, was immediately rehired in a different capacity after his resignation, and was discharged almost two months later. After her arrest, Dr. Moore was immediately placed on administrative leave, subsequently banned from campus, and terminated about one month later. There is no indication in the record that Dr. Moore was permitted to resign.

The situations involving Mr. Gray and Dr. Moore, however, were handled by different supervisors. For this reason, Mr. Gray is not an appropriate comparator at the pretext stage. While the record shows that all relevant post-incident employment decisions were made by the President of the College, the presidents at the time of these two separate incidents were different. Mr. Gray was supervised, allowed to resign, rehired, and then later terminated by President Kimbrough, while Dr. Moore was placed on administrative leave, banned from campus, and terminated by President Johnny Moore. "Although a change in managers is not a defense to claims of [] discrimination," evidence that one manager is more lenient than another may explain differential application of sanctions to men under one manager and women under another. *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 606 (8th Cir. 1983); *see Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1271 (6th Cir. 1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees").

The Court has reviewed the record evidence relating to potential comparator Mr. Gray. The Court finds, viewing the facts in the light most favorable to Dr. Moore, Dr. Moore and Mr. Gray were not "similarly situated in all respects," subject to the rigorous comparator standard at the pretext stage. Thus, even if Dr. Moore could meet her burden of establishing a *prima facie* case of gender discrimination, she cannot meet her burden at the pretext stage, and the College is entitled to summary judgment on her Title VII and ACRA gender discrimination claims.

Dr. Moore also mentions in her complaint 42 U.S.C. § 1981, which protects against race discrimination. Dr. Moore, however, alleges no facts in her complaint or in her response to the College's motion for summary judgment which could tend to prove a race discrimination claim. To the extent Dr. Moore attempted to bring a race discrimination claim in this action, the College also is entitled to summary judgment on that claim.

### IV. Breach of Contract Claim

Dr. Moore alleges a breach of contract claim against the College under Arkansas law. Because the Court dismisses the federal claims in Dr. Moore's complaint, the Court declines to exercise supplemental jurisdiction over Dr. Moore's breach of contract claim.

\* \* \*

For these reasons, Philander Smith College's motion for summary judgment is granted on Dr. Moore's gender and race discrimination claims (Dkt. No. 14).  Dr. Moore's gender and race discrimination claims are hereby dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction on Dr. Moore's breach of contract claim under Arkansas law.  The period of limitations on Dr. Moore's breach of contract claim under Arkansas law is tolled under 28 U.S.C. § 1367(d) from the time of the filing of this case until 30 days after entry of judgment in this case, unless Arkansas gives a longer tolling period.  Judgment will be entered accordingly.

SO ORDERED this 6th day of June, 2014.

_____
Kristine G. Baker
United States District Judge